IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| **ADVARRA TECHNOLOGY SOLUTIONS, INC.,** § § § | |
| Plaintiff, § | |
| v. § | Civil Action No. 4:22-cv-001049-O |
| § | |
| **NORTH TEXAS CLINICAL TRIALS, LLC,** § § § | |
| Defendant. § | |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE

Before the Court are the Motion for Entry of Default Judgment that Advarra Technology Solutions, Inc. ("Advarra") filed against North Texas Clinical Trials, LLC ("NTCT"), and supporting Appendix (ECF Nos. 16, 17) and Advarra's Supplemental Brief and supporting Appendix (ECF No. 21, 22). By Order dated April 8, 2023, United States District Judge Reed O'Connor referred the Motion to the undersigned for hearing, if necessary, and determination or recommendation under 28 U.S.C. § 636(b)(1). ECF No. 19. Having considered the Motion, briefing, appendices, and applicable legal authorities, the undersigned **RECOMMENDS** that United States District Judge Reed O'Connor **GRANT in part** and **DENY in part** the Motion (ECF No. 16), **ENTER default judgment** on Advarra's breach of contract and unjust enrichment claims, and award Advarra costs and reasonable attorney's fees as explained below.

### I.   BACKGROUND

This case is a suit on an account. Advarra is a provider of payment software platforms. ECF No. 1 at 1. On January 29, 2017, its predecessor, Nimblify, Inc., entered an agreement ("the Agreement") with NTCT to provide access to its platform in return for the fees outlined in the

Agreement. *Id*. The Agreement provided for NTCT to make payments every two weeks, which NTCT did until February 2022. *Id*. Since then, Advarra invoiced NTCT ten times for the total amount of $507,961.11, and NTCT made only ten payments totaling $32,483.52. *Id*. at 1-2. NTCT currently owes Advarra $483,751.28, plus penalties as provided in the Agreement. *Id*. at 2.

Advarra also alleged that NTCT wrongfully withdrew $8,273.69 from its ACH account on August 15, 2022. *Id*. at 7. Advarra asserts that NTCT had no right to make the withdrawal, and Advarra has been damaged in the amount of the withdrawal. *Id*.

Because NTCT did not pay the amounts it owed, Advarra terminated the Agreement and sued NTCT to recover the amounts owed under breach of contract and unjust enrichment causes of action. ECF No. 1. On December 14, 2022, a process server served NTCT with the Summons and Complaint. ECF No. 16 at 1-2. When NTCT filed no responsive pleadings, Advarra asked the Clerk to enter default, *see* ECF No. 11, which the Clerk did. ECF No. 13. Advarra now moves for default judgment against NTCT for breach of contract and unjust enrichment plus its attorney's fees. ECF No. 16. The Court ordered supplemental briefing on Advarra's request for attorney's fees. ECF No. 20. Advarra complied, filing supplemental briefing with additional evidence. ECF Nos. 21, 22.

## II.   LEGAL STANDARDS

### A.   Default Judgment.

Federal Rule of Civil Procedure 55 governs the entry of default and default judgment. There are three stages to entry of default judgment. First, a default occurs "when a defendant has failed to plead or otherwise respond to the complaint within the time required by the Federal Rules." *N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996); *see also* Fed. R. Civ. P. 55(a) (noting default occurs where the defendant "has failed to plead or otherwise defend" against the

complaint). Second, the Clerk may enter a defendant's default if it is "established by affidavit or otherwise." *Brown*, 84 F.3d at 141 (citing Fed. R. Civ. P. 55(a)). Third, if the Clerk enters default and the plaintiff's claim is not "for a sum certain or a sum that can be made certain by computation," the plaintiff must apply for a default judgment from the Court. Fed. R. Civ. P. 55(b)(1-2). However, the Court may not enter default judgment against an individual in military service until an attorney is appointed to represent the defendant. 50 U.S.C. § 521.

"[A] party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default." *Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001). Rather, courts retain ultimate discretion to grant or deny default judgments. *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).

Courts use a three-pronged analysis to determine if default judgment is appropriate. *J & J Sports Prods., Inc. v. Morelia Mex. Rest., Inc.*, 126 F. Supp. 3d 809, 813 (N.D. Tex. 2015). First, courts ask if default judgment is procedurally warranted. *See Lindsey*, 161 F.3d at 893. The *Lindsey* factors inform this first inquiry. Under *Lindsey*, the Court may consider whether: (1) material issues of fact exist; (2) there has been substantial prejudice; (3) the grounds for default are clearly established; (4) the default was caused by a good faith mistake or excusable neglect; (5) default judgment would be too harsh; and (6) the court would be obliged to set aside the default upon motion from the defendant. *Id.*

Second, if default is procedurally warranted under *Lindsey*, courts analyze the substantive merits of the plaintiff's claims and ask if the pleadings establish a sufficient basis for default judgment. *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). The pleadings are sufficient if they satisfy Federal Rule of Civil Procedure 8. *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015); *see* Fed. R. Civ. P. 8(a)(2) (requiring "a

short and plain statement of the claim showing that the pleader is entitled to relief"). "The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established." *Nishimatsu*, 515 F.2d at 1206. But the "defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Id.*

Third, courts determine what form of relief, if any, the plaintiff should receive. *Morelia*, 126 F. Supp. 3d at 813. In making this determination, the Complaint's "well-pleaded factual allegations are taken as true, except regarding damages." *U.S. for Use of M-Co Constr., Inc. v. Shipco General, Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987); *see generally Jackson v. FIE Corp.*, 302 F.3d 515, 525 & n.29 (5th Cir. 2002) ("If the court determines that defendant is in default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.") (quoting 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY K. KANE, FEDERAL PRACTICE & PROCEDURE § 2688 at 58-59 & n.5 (3d ed. 1998)). At this juncture, courts often find it helpful to conduct a Rule 55(b)(2) hearing. *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979) ("The case law is clear that a judgment by default may not be entered without a hearing unless the amount claimed is a liquidated sum or one capable of mathematical calculation."); *see* Fed. R. Civ. P. 55(b)(2) (noting courts may conduct a hearing on motions for default judgment if needed to "(A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter").

While the Fifth Circuit has "adopted a policy in favor of resolving cases on their merits and against the use of default judgments," this policy is "counterbalanced by considerations of social goals, justice and expediency, a weighing process . . . largely within the domain of the trial judge's discretion." *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 742 F.3d 576, 594

(5th Cir. 2014) (quoting *Rogers v. Hartford Life & Accident Ins. Co.*, 167 F.3d 933, 936 (5th Cir. 1999)). But default judgment remains "a drastic remedy, not favored by the Federal Rules." *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989); *see also Shipco*, 814 F.2d at 1014 (calling default judgments "draconian").

    **B.**    **Attorneys' Fees.**

The Court has "broad discretion in setting the appropriate award of attorneys' fees." *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993). The first step in setting an appropriate award looks to the "lodestar" of the relevant fees. *Id.* "The lodestar is the product of the number of hours reasonably expended on the litigation multiplied by a reasonable hourly billing rate." *League of United Latin Am. Citizens No. 4552 (LULAC) v. Roscoe Indep. Sch. Dist.*, 119 F.3d 1228, 1232 (5th Cir. 1997). The lodestar sets the baseline for reasonable fees, but the Court "may adjust it upward or downward in exceptional cases." *Id.*; *see also Cobb v. Miller*, 818 F.2d 1227, 1231 (5th Cir. 1987) ("[T]he calculation of the lodestar does not end the inquiry and [] other considerations may persuade the district court to increase or decrease a fee award.").

After calculating the lodestar, the Court must evaluate the amount in light of the twelve factors enumerated in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989). The *Johnson* factors include: (1) "the time and labor required"; (2) "the novelty and difficulty of the questions"; (3) "the skill requisite to perform the legal service properly"; (4) "the preclusion of other employment by the attorney due to acceptance of the case"; (5) "the customary fee"; (6) "whether the fee is fixed or contingent"; (7) "time limitations imposed by the client or circumstances"; (8) "the amount involved and the results obtained"; (9) "the experience, reputation, and ability of the attorneys"; (10) "the 'undesirability' of the case"; (11) "the nature and length of the professional

relationship with the client"; and (12) "awards in similar cases." *Id.*; *see also* Tex. Disciplinary Rules Prof'l Conduct R. 1.04, *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G, app. A (Tex. State Bar R. art. X, §9) (incorporating some of the *Johnson* factors into the State Bar of Texas's rules of professional conduct). "[O]f the *Johnson* factors, the court should give special heed to the time and labor involved, the customary fee, the amount involved and the result obtained, and the experience, reputation and ability of counsel." *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998).

"[I]t will not always be necessary for a district court to address each of the twelve factors in explaining the considerations affecting its decision." *Davis v. Fletcher*, 598 F.2d 469, 471 (5th Cir. 1979). Nevertheless, "[i]t remains important . . . for the district court to provide a concise but clear explanation of its reasons for the fee award." *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 329 (5th Cir. 1995) (citation omitted). "[C]ourts customarily require the applicant to produce contemporaneous billing records or other sufficient documentation so that the district court can fulfill its duty to examine the application for noncompensable hours." *Gagnon v. United Technisource, Inc.*, 607 F.3d 1036, 1044 (5th Cir. 2010) (quoting *Kellstrom*, 50 F.3d at 324). While the absence of contemporaneous billing records "does not preclude an award of fees per se," the evidence must be "adequate to determine reasonable hours." *Id.* (quoting same at 325).

### III.  ANALYSIS

To determine whether entry of a default judgment is proper, the Court applies a three-pronged inquiry. *See Morelia*, 126 F. Supp. 3d at 813. Advarra requests entry of a default judgment based on the Complaint's unjust enrichment and breach of contract claims. ECF No. 16. Having conducted the three-part analysis for each, the undersigned concludes that Judge O'Connor should grant the Motion as to both claims.

Advarra's claims survive the first of the three-pronged inquiry. Under *Lindsey*, default judgment may be procedurally warranted based on six considerations. *See* 161 F.3d at 893. Each of the six supports default judgment for Advarra's unjust enrichment and breach of contract claims.

For the first factor, no material issues of fact remain for Advarra's claims. Advarra's pleadings state particular facts to show unjust enrichment because NTCT benefitted from Advarra due to fraud, duress, or unfair advantage, and permitting NTCT to retain the money wrongfully withdrawn from Advarra's ACH account would be unconscionable. Likewise, Advarra's pleadings show that NTCT breached the Agreement. Nothing here shows the second factor's "substantial prejudice" requirement undermines Advarra's entitlement to default judgment. *See Lindsey*, 161 F.3d at 893. The third and fourth elements also support default judgment because the grounds of NTCT's default are clearly established, *see* ECF Nos. 16-18, and nothing indicates that NTCT's default was due to "a good faith mistake or excusable neglect." *See Lindsey*, 161 F.3d at 893. To date NTCT has failed to file any pleadings with the Court, despite being afforded abundant opportunities to do so. Accordingly, the fifth factor supports default judgment, as a judgment by default is not too harsh when the defaulting party has had every opportunity to plead its cause, but did not do so. *Id.* Finally, given the clear satisfaction of the above elements, nothing indicates that the Court would "be obliged to set aside the default upon motion from the defendant." *See id.*; *see also Moreno v. LG Elecs.*, 800 F.3d 692, 698 (5th Cir. 2015) (noting district courts are not obliged to set aside a default upon defendant's motion where "the default was willful, the plaintiff will be prejudiced, or the defendant has no meritorious defense").

With each of the six *Lindsey* factors supporting default judgment on Advarra's unjust enrichment and breach of contract claims, they both survive the step-one analysis. *See Morelia*, 126 F. Supp. 3d at 813. At step two, the Court must examine the substantive merits of Advarra's

claims and determine whether the pleadings establish a sufficient basis for default judgment on each. *See Nishimatsu*, 515 F.2d at 1206. The Court finds that they do so.

### A. Default judgment is appropriate for Plaintiff's unjust enrichment claim.

A plaintiff's pleadings typically establish entitlement to default judgment if they satisfy Federal Rule of Civil Procedure 8. *Wooten*, 788 F.3d at 498. To do so, the pleadings need only contain "a short and plain statement of the claim" showing plaintiff's entitlement to relief. Fed. R. Civ. P. 8(a). "Under Texas law an unjust enrichment claim requires showing that one party 'has obtained a benefit from another by fraud, duress, or the taking of an undue advantage.'" *Digital Drilling Data, Systems, L.L.C. v. Petrolink Services, Inc.*, 965 F.3d 365, 379-80 (5th Cir. 2020) (quoting *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992)). And "some observers . . . have suggested Texas law actually recognizes two theories or species of unjust enrichment: one for passive receipt of a benefit that would be unconscionable to retain, and another for wrongfully securing a benefit." *Id*. at 380.

Advarra's unjust enrichment pleadings satisfy Rule 8(a)'s pleading requirements. The Complaint alleges unjust enrichment and states facts showing that NTCT damaged Advarra through fraud, duress, or unfair advantage, and unconscionability. ECF No. 1. NTCT had no right to withdraw funds from Advarra's ACH account, and its possession of those funds is wrongful. The Declaration of James Kinsman ("Kinsman Declaration"), offered by Advarra in support of the Motion, proves that NTCT withdrew the $8,273.69 from Advarra's account without cause. ECF No. 17-1 at 22.

### B. Default judgment is appropriate for Advarra's breach of contract claim.

The Complaint establishes Advarra's entitlement to default judgment on the breach of contract claim. *See* ECF No. 1, 16. "The essential elements of a breach of contract action are: (1)

the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Smith Int'l., Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007). Advarra has established each element. Advarra proved through the Kinsman Declaration that under the Agreement, NTCT failed to pay Advarra invoices totaling $475,472.62. ECF No. 17-1 at 22. It further proved that the Agreement required NTCT to pay a penalty in the amount of 3% per month beginning June 29, 2022, totaling an additional amount owing of $92,266.55. *Id*. Given NTCT's silence on the matter, the Court must accept that evidence as true. *Shipco*, 814 F.2d at 1014.

> **C.    The Court should enter default judgment in Advarra's favor against NTCT for $604,150.36 plus post-judgment interest in the federal rate from the date of judgment until it is paid.**

Default judgment is appropriate against NTCT on Advarra's unjust enrichment and breach of contract claims. But the Court's inquiry does not end there. Having concluded default judgment is proper, the Court must now "determine what form of relief, if any, the plaintiff should receive." *Morelia*, 126 F. Supp. 3d at 814. This is the only step in the inquiry where the Court does not assume the pleadings' truth. *See Shipco*, 814 F.2d at 1014 ("After a default judgment, the plaintiff's well-pleaded factual allegations are taken as true, except regarding damages."). Advarra cannot summarily provide the Court with figures for damages or attorney's fees without explanation. Rather, it must "establish[] the necessary facts," either through detailed affidavits or an evidentiary hearing, to make the amount "capable of mathematical calculation." *United Artists*, 605 F.2d at 857. After considering the Motion and supplemental briefing, the undersigned concludes damages in this matter are mathematically ascertainable, amounting to $604,150.36 plus post-judgment interest at the federal rate from the date of judgment until it is paid. This figure is the total of (1) Advarra's damages under the Agreement; and (2) Advarra's reasonable attorneys' fees.

9

### 1. Plaintiff is entitled to $576,012.86 in damages.

As noted above, Advarra's damages under the Agreement total $475,472.62 in unpaid invoices plus $92,266.55 in the unpaid penalty amount. The damages for unjust enrichment total $8,273.69, representing the amount that NCTC wrongfully withdrew from Advarra's ACH account. Adding those three figures, Advarra's total entitlement for unjust enrichment and breach of contract damages equals $576,012.86.

Advarra also prayed for "interest" and "prejudgment and post-judgment interest" in its Complaint (*see* ECF No. 1 at 6, 7), but it did not seek to recover interest in its Motion. In the absence of evidence to support its claim of prejudgment interest, the undersigned does not recommend an award for that amount. The Court should award Advarra post-judgment interest at the federal rate under 28 U.S.C. §1961(a). *Bos. Old Colony Ins. Co. v. Tiner Assocs. Inc.*, 288 F.3d 222, 234 (5th Cir. 2002). Post-judgment interest is compounded annually. *Craig v. GACP II, L.P.*, No. 3:19-cv-0058-G, 2022 WL 1778392, at *4 (N.D. Tex. June 1, 2022).

### 2. The Court should award Advarra $28,137.50 in reasonable attorney's fees and also award it court costs.

Under Texas Civil Practice & Remedies Code § 38.001, Advarra is entitled to recover reasonable and necessary attorney's fees as the prevailing party on its breach of contract claim. Tex. Civ. Prac. & Rem. Code § 38.001(8) (West 2022); *Kona Tech. Corp. v. Southern Pac. Transp. Co.*, 225 F.3d 595, 614 (5th Cir. 2000) ("[W]hen a prevailing party in a breach of contract suit seeks attorneys' fees, an award of reasonable fees is mandatory under Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8)."). Because Advarra prevailed on its breach of contract claim, the Court should award it reasonable attorney's fees.

The attorney's fees and costs incurred by Advarra and sought in the Motion total $57,156.68. ECF No. 22 at 6. Step one in determining an appropriate fee award involves finding

the lodestar, which "is the product of the number of hours reasonably expended on the litigation multiplied by a reasonable hourly billing rate." *LULAC*, 119 F.3d at 1232. In support of its request for attorney's fees, Advarra offers the Declarations of Gregory L. Demers and Matthew W. Ray (collectively "the Declaration") and attachments that include redacted and unredacted copies of billing invoices. ECF No. 22.

The Declarations and attached billing records reflect that Mr. Demers is Counsel at the law firm of Ropes & Gray LLP and had a billing rate of $1,290.00 per hour in 2022 and $1,450.00 per hour in 2023. ECF No. 22 at 4. His associate, Daniel Murphy, had a billing rate of $700.00 hour in 2022 and $900.00 per hour in 2023. *Id*. Mr. Ray is Counsel at Deary Ray LLP. ECF No. 22 at 20. His billing rate for 2022 and 2023 was $650.00 per hour. *Id*. Mr. Demers's charges equal $26,757.50 for 19.75 hours, Mr. Murphy's charges equal $22,675 for 28.25 hours, and Mr. Ray's charges equal $7,692.34 "in attorneys' fees and costs associated with the above-captioned matter." *Id*. at 5. Further examination of Mr. Ray's charges shows that his fees equal $6,825.00 for 10.50 hours, and the remaining $867.34 is for "case filing fees and service by Special Delivery Services, Inc." *Id*. at 21.

Initially, the Court must determine if the attorney's fees requested represent a reasonable number of hours expended at a reasonable hourly amount. *Alexander v. City of Jackson Miss.*, 456 F. App'x 397, 399-400 (5th Cir. 2011). This case is a straightforward suit on an account that fairly quickly resulted in entry of a default and the filing of the pending Motion. Nevertheless, the Court concludes that the number of hours incurred by either the lawyers appearing pro hac vice, Messrs. Demers and Murphy, and their local counsel, Mr. Ray, were reasonable. There rarely is a case in which there is no duplication of effort or overlapping of tasks by two or more lawyers on a matter, particularly when the lawyers are in different firms. And once it becomes clear that a defendant is

not going to respond to process in a case, the more seasoned lawyer may not be able to immediately shift the bulk of remaining responsibilities to his more junior colleague. Reductions in fees requested, or deletions in hours sought to be recovered in the judgment, both of which Advarra's counsel did here (*see* ECF No. 22 at 5, 21), are sufficient to account for the duplications and overlapping work that appear in the time records submitted in this case.

However, the Court must conclude that the hourly rates charged by Advarra's lead counsel were not reasonable. After dividing the total amounts charged by each lawyer by the total hours incurred by each, the average hourly billing rates are $1,355.00 for Mr. Demers, $803.00 for Mr. Murphy, and $650.00 for Mr. Ray. The Court notes that Mr. Demers and Mr. Murphy practice at Ropes & Gray's Boston office. ECF Nos. 6 at 1 and 7 at 1. Mr. Demers was admitted to practice in Massachusetts in November 2010, and Mr. Murphy was admitted there in December 2021. ECF Nos. 6 at 2 and 7 at 2. According to the Court's records, Mr. Ray was admitted to the bar of the Court in April 1996. The State Bar of Texas shows that he was admitted to practice in Texas in November 1993. *See* https://www.texasbar.com/AM/Template.cfm?Section=Find_A_Lawyer&template=/Customsource/MemberDirectory/MemberDirectoryDetail.cfm&ContactID=151642 (last visited 9/7/2023). The hourly rates that Messrs. Demers and Murphy charged are well in excess of the reasonable, usual, and customary billing rates for attorneys who regularly practice in the Fort Worth Division of the Court. Mr. Ray's hourly rate is at the top of the range of reasonableness for lawyers with similar years of experience and backgrounds.

Based upon the Court's familiarity with the reasonable, usual, and customary billing rates in the Fort Worth Division of the Court for lawyers with similar years of experience and backgrounds, the undersigned finds that Advarra's fee award request is exceptional. An adjustment in the lodestar amount is necessary in the interest of justice. Although they practice in a large,

prominent law firm in Boston, the work that Messrs. Demers and Murphy performed in this case did not justify the billing rates that Advarra seeks to recover in the Motion. As mentioned earlier, Mr. Ray has been licensed for almost thirty years and has practiced as a member of the bar of the Court for over twenty-five years. His billing rate is less than half of Mr. Demers's rate and almost twenty percent less than Mr. Murphy's. And as mentioned, at $650.00 per hour, Mr. Ray's billing rate is at or slightly above the reasonable, usual, and customary billing rates for matters such as this one filed by experienced commercial trial lawyers in this division.

Therefore, the Court concludes that the reasonable billing rates that should apply to this case are $650.00 per hour for Mr. Demers and Mr. Ray and $300.00 per hour for Mr. Murphy. Applying these rates to the number of hours billed yields a total reasonable attorney's fee of $12,837.50 for Mr. Demers, $8,475.00 for Mr. Murphy, and $6,825.00 for Mr. Ray. The undersigned finds that $28,137.50 is the reasonable lodestar for this matter.

The Court can adjust that lodestar up or down based on an analysis of the twelve *Johnson* factors. *See Johnson*, 488 F.2d at 717-19. After considering the briefing and appendices that Advarra filed, the Court concludes that no further adjustment is warranted. Half of the *Johnson* factors are neutral (factors 2, 3, 4, 7, 10, and 11), while half of the *Johnson* factors indicate the adjusted lodestar amount is reasonable (factors 1, 5, 6, 8, 9, and 12). None indicates that the adjusted fees are unreasonable. Moreover, the most important of the *Johnson* factors—"the time and labor involved, the customary fee, the amount involved and the result obtained, and the experience, reputation and ability of counsel," *see Migis*, 135 F.3d at 1047—all suggest that the adjusted lodestar amount is reasonable.

To briefly touch on the neutral factors, factor two is not at issue here because this case stems from a suit on an account, thus presenting no "novel" or "difficult" legal questions. *See*

13

*Johnson,* 488 F.2d at 718. Likewise, the third factor is not relevant because this case does not require attorneys with highly specific or niche competencies. *See id.* And none of Advarra's counsel suggests that he was significantly precluded from other work by taking this case, rendering the fourth factor inapplicable. *See id.* Further, there was no suggestion that pressing time constraints apply to this action or atypical "time limitations imposed by the client or circumstances." *Id.* Because the case presents nothing uniquely undesirable from a practitioner's perspective, the tenth *Johnson* factor also does not inform the Court's inquiry. *See id at 719.* And finally, "the nature and length of the professional relationship with the client" does not factor into the Court's reasonability analysis because nothing of record reflects the nature and extent of Advarra's relationship with either Ropes & Gray or Mr. Ray's firm. Accordingly, that factor is irrelevant for the Court's reasonability analysis. *See id.*

As for factors suggesting that $28,137.50 would be a reasonable attorney fee for work in this matter, the first *Johnson* factor is "the time and labor required" for an attorney to prosecute the action. *Id.* at 717. As noted above, the amount of time and labor required is not at issue in the lodestar amount, nor is there any need to revise it at this point. Having examined the relevant billing records and determined that $28,137.50 is a reasonable lodestar, that total should reasonably accompany default judgment on Advarra's breach of contract claim. This figure provides ample, but not unreasonable, compensation for 58.50 hours of reasonable and necessary legal representation. Consequently, the first *Johnson* factor indicates the amount of requested fees, as adjusted, is reasonable. *See id.* at 717.

The fifth *Johnson* factor also lends support to Advarra's request. The fifth factor looks to the "customary fee" in similar cases. *See id. at 718.* In this regard, "courts in the Northern District [of Texas] have approved regular hourly rates of $345, $350, and $375." *Koehler v. Aetna Health*

14

*Inc.*, 915 F. Supp. 2d 789, 799 (N.D. Tex. 2013) (collecting cases). While $650.00 exceeds these amounts and indeed is a substantial sum of money for an hour's work, this is not beyond the upper range of reasonableness for a lawyer with over ten years of experience in business litigation who regularly appears in the Fort Worth Division of the Court. This is naturally accompanied by the sixth factor—"whether the fee is fixed or contingent." 488 F.2d at 718. Ordinarily, larger fees may be justified if the fee is contingent. But here the fee is not relatively large, and the fact that both Ropes & Gray and Mr. Ray's law firm apparently represented Advarra on an hourly basis facilitates efficient calculations like the one conducted above. The sixth factor supports an attorney's fee award of $28,137.50 here.

By far the most important factors in this case are *Johnson*'s eighth and ninth factors: the "amount involved and results obtained" and the "experience, reputation, and ability of the attorneys." *See id.* at 718-19. The eighth factor makes $28,137.50 seem quite reasonable, as such a factor represents less than five percent of the total value of the proposed judgment ($576,012.86). Likewise, the ninth factor shows $28,137.50 to be a reasonable amount because of the experience and reputation of Advarra's counsel and their firms. And finally, similar attorney's fee awards in near the amount of fees charged here are commonplace in this Court and elsewhere. *See, e.g.*, *Koehler*, 915 F. Supp. 2d at 797-800 (collecting cases). Accordingly, Judge O'Connor should grant $28,137.50 in reasonable attorneys' fees.

As a prevailing party, Advarra also is entitled to recover its costs, unless a federal statute, a federal rule, or the Court provides differently. Fed. R. Civ. P. 54(d)(1). Taxable court costs applicable to this case include (1) fees paid to the clerk and marshal; (2) court reporter fees for deposition transcripts; (3) witness fees and related expenses; (4) printing fees; and (5) fees for copies of papers necessarily obtained for the case. 28 U.S.C. § 1920. There is "a strong

presumption that the prevailing party will be awarded costs." *Schwarz v. Folloder*, 767 F.2d 125, 131 (5th Cir. 1985) (citing *Delta Air Lines, Inc. v. August*, 450 U.S. 346, 352 (1981)). For all of these reasons, the Court should award Advarra its taxable court costs.

## IV. CONCLUSION

For these reasons, the undersigned **RECOMMENDS** that Judge O'Connor **GRANT in part** and **DENY in part** Plaintiff's Motion for Entry of Default Judgment (ECF No. 16). Judge O'Connor should **ENTER DEFAULT JUDGMENT** in favor of Plaintiff Advarra Technology Solutions, Inc. against Defendant North Texas Clinical Trials, LLC in the amount of **$576,012.86**, reasonable attorney's fees in the amount of $28,137.50, post-judgment interest calculated at the applicable federal rate from the date judgment is entered and compounded annually, and costs of court.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). To be specific, an objection must identify the particular finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

**SIGNED** on September 8, 2023.

_____
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE